CITY OF SAGINAW v LINDQUIST

Docket No. 67479. Submitted April 17, 1984, at Lansing.—Decided October 30, 1984. Leave to appeal applied for.

The City of Saginaw Administrative Code provides that city employees shall maintain a permanent and bona fide residence within the corporate limits of the city and that failure to do so is deemed to be an abandonment of employment. In 1981, Nancy Lindquist had been a clerk typist with the City of Saginaw for ten years. Lindquist and her husband sold their Saginaw residence and purchased a home in Lupton, Michigan. Lindquist asserted that she continued to maintain a Saginaw address and commuted to Lupton on weekends and on those occasions when her children's health or school activities required her attendance. The city determined that the Saginaw address was not a bona fide residence and released Lindquist, classifying the termination as a voluntary quitting. Lindquist filed a claim for unemployment compensation benefits. A Michigan Employment Security Commission referee determined that Lindquist was ineligible for benefits by reason of the fact that she was "discharged for reasons constituting misconduct with her work". Lindquist appealed to the board of review which, by a two-to-one decision, reversed the referee's determination, holding that, while Lindquist had violated the city's residency requirement, such conduct was not work connected. The city filed an appeal in the Saginaw Circuit Court, naming and serving both Lindquist and the MESC. Lindquist filed a motion for summary judgment but served only the city with a copy of the motion, which resulted in the MESC being unrepresented during the consideration of the motion. The circuit court, Fred J. Borchard, J., entered summary judgment in favor of Lind-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 63A Am Jur 2d, Public Officers and Employees § 60.
76 Am Jur 2d, Unemployment Compensation §§ 52, 63.
Eligibility for unemployment compensation as affected by voluntary resignation because of change of location of residence. 21 ALR4th 317.
Unemployment compensation as affected by employee's or employer's removal from place of employment. 13 ALR2d 874.
[3] 76 Am Jur 2d, Unemployment Compensation § 93.

quist, holding that the violation of the city's residency require-
ment did not establish misconduct such as will disqualify an
employee from receiving unemployment benefits. The city ap-
pealed. On appeal the MESC supported the position of the city
and further argued that it was error for the circuit court to
grant summary judgment in favor of Lindquist since Lindquist
had failed to provide notice to the MESC of the summary
judgment proceedings. *Held:*

1. Since there was competent, material and substantial evi-
dence on the record supporting the findings of the referee and
the board of review that Lindquist was not a bona fide resident
of the City of Saginaw, the question on appeal is whether the
termination of her employment for failure to continue to
satisfy the residency requirement disqualified her from secur-
ing unemployment benefits.

2. Lindquist's failure to continue to satisfy the city's resi-
dency requirement constituted misconduct within the meaning
of the Michigan Employment Security Act, since by her failure
to continue to maintain a bona fide residence within the city
she had intentionally and substantially disregarded her obliga-
tion to her employer. Lindquist's discharge for such misconduct
acted to disqualify her for unemployment benefits.

3. Lindquist, by voluntarily failing to continue to maintain a
bona fide residence within the city where such residency was a
prerequisite to continued employment, undertook an act which
constitutes a voluntary leaving without good cause attributable
to her employer within the meaning of the Michigan Employ-
ment Security Act. Even if Lindquist's actions were not deemed
to be misconduct, her actions would constitute a voluntary
leaving and she would be disqualified for benefits on that basis.

4. The MESC, by statute, shall be considered to be a party to
any judicial action involving an order or decision of a referee or
the board of review. Since the MESC had filed its appearance
with the circuit court in this matter, it was error for Lindquist
to fail to serve the MESC with her motion and thereby give the
MESC notice of the summary judgment proceedings.

Reversed and remanded.

1. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION FOR BENEFITS
— MISCONDUCT.

Misconduct, as that term is used relative to disqualification of an
employee for unemployment benefits, includes any intentional
and substantial disregard by the employee of the employer's
best interests; the failure of a municipal employee to continue
to satisfy the employer's residency requirement constitutes

misconduct which will disqualify the employee for unemployment benefits where the employee is released from employment because of the failure to continue to satisfy the residency requirement (MCL 421.29[1][b]; MSA 17.531[1][b]).

2. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION FOR BENEFITS — VOLUNTARY TERMINATION.

The termination of employment of a municipal employee because of the voluntary failure of the employee to continue to satisfy a residency requirement is a voluntary leaving without good cause attributable to the employer within the meaning of that phrase as used in the provisions which disqualify an employee for unemployment benefits (MCL 421.29[1][a]; MSA 17.531[1][a]).

3. PARTIES — EMPLOYMENT SECURITY COMMISSION — SERVICE OF PLEADINGS.

The Michigan Employment Security Commission, by statute, is considered to be a party to any judicial action involving an order or decision of the board of review or a referee; where the commission has entered an appearance in circuit court in an appeal of a decision and order of the board of review, a copy of all subsequently filed papers must be served on the commission (MCL 421.38[3]; MSA 17.540[3]; GCR 1963, 107.1[1]).

*Robert E. Helm,* Assistant City Attorney, for the City of Saginaw.

*Borrello, Thomas & Jensen, P.C.* (by *Peter C. Jensen),* for Nancy A. Lindquist.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *David A. Voges,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and T. GILLESPIE,* JJ.

T. GILLESPIE, J. Chapter 3, Section 115 of the City of Saginaw Administrative Code provides that city employees shall maintain a permanent and bona fide residence within the corporate limits of

* Circuit judge, sitting on the Court of Appeals by assignment.

the city and that failure to do so is deemed to be an abandonment of employment.

Mrs. Nancy Lindquist was a clerk typist who, in 1981, had been employed for ten years by the city. She and her husband sold their Saginaw residence and purchased a home in Lupton, Michigan. The children were placed in school in Lupton and Mrs. Lindquist commuted to Lupton on weekends and on those occasions when the children's health and school activities required her attendance. She maintained a Saginaw address; however, the city determined that the claimed Saginaw residence was not a bona fide residence and terminated her employment. The termination was classified as a voluntary quitting. When she applied for unemployment compensation, the referee found her ineligible for benefits because she was "discharged for reasons constituting misconduct with her work". On appeal, the Michigan Employment Security Board of Review, in a two-to-one decision, decided that, while Lindquist had violated the city's residence requirements, such conduct was not work connected and reversed the disqualification.

The city appealed to the Saginaw County Circuit Court, which sustained the board of review. The city appeals to this Court.

We reverse and remand.

Nancy Lindquist was hired by the City of Saginaw Water and Sewer Maintenance Department on August 23, 1971, as a clerk typist. On January 27, 1981, an anonymous telephone call came to the city reporting that Nancy Lindquist was not living in Saginaw. She had reported that her address was 3122 Fulton Street, Saginaw. The address was a property owned by Gladys Brown, a deceased aunt of Mrs. Lindquist's husband. Upon investigation the city found the house was for sale, the water

and sewer were disconnected, and Michigan Bell Telephone Company had no listing for her. When Mrs. Lindquist met with city officials, she told them that she lived at that address a few days each week. Her husband and children lived in Lupton and she saw them on weekends and when she would go home if one of the children was ill. She paid no rent or utilities, but was registered to vote in Saginaw and the address on her driver's license was there. She was aware of the residency requirement.

Based on the information received, Mrs. Lindquist's employment was terminated on February 5, 1981, for failure to maintain a bona fide residence in the City of Saginaw.

On May 8, 1981, the Michigan Employment Security Commission referee found that such violation was misconduct which would disqualify Lindquist from receiving unemployment benefits.

The board of review of the MESC on March 12, 1982, in a two-to-one decision, reversed the decision of the referee. The finding was unanimous that Lindquist had violated the city's residency requirement, however, the majority felt that such conduct was not work connected and reversed the order disqualifying her from receiving unemployment benefits.

The city filed an appeal in the Saginaw Circuit Court on June 9, 1982, seeking review of the MESC Board of Review's decision pursuant to MCL 421.38; MSA 17.540 and GCR 1963, 706.2. The MESC and Lindquist were named as adverse parties and were served with copies of the appeal. Lindquist filed a motion for summary judgment, but did not serve the MESC. The motion was argued by the attorneys for the city and Lindquist. The MESC was not represented by counsel at the hearing on the motion due to failure to notify it of

the hearing. On September 28, 1982, the court issued its opinion, holding, as had the MESC review board, that the violation of the city's work rules relating to residency did not establish misconduct under the Michigan Employment Security Act, and entered summary judgment in favor of Lindquist.

The city appealed to this Court. Lindquist filed a motion to affirm on the grounds that the questions sought to be reviewed are so unsubstantial as to need no argument or formal submissions. GCR 1963, 817.5(3).

The MESC, after a review of the case by its Benefit Appeals Committee, decided to take a position supporting the position of the city even though the city in its appeal to the circuit court had named the MESC as an adverse party.

Lindquist argues in this appeal that the city failed to prove by competent, material and substantial evidence that she did not reside in Saginaw.

Residence of one's family is not determinative, but is a relevant factor. The question of residency is one of intent which is arrived at from careful consideration of all facts and circumstances. *Choike v Detroit,* 94 Mich App 703; 290 NW2d 58 (1980), *lv den* 408 Mich 892 (1980); *Grable v Detroit,* 48 Mich App 368; 210 NW2d 379 (1973).

The burden of proof in a residency case rests with the city and not the employee. *Masters v Highland Park,* 79 Mich App 77; 261 NW2d 215 (1977), *aff'd* 402 Mich 907 (1978).

The referee and board of review of the MESC found that Lindquist did not reside in Saginaw. This finding was supported by competent, material and substantial evidence on the record considered as a whole and was not contrary to law and is therefore sustained. Const 1963, art 6, § 28; MCL

24.306(1)(d), 423.216; MSA 3.560(206)(1)(d), 17.455(16). *West Ottawa Education Ass'n v West Ottawa Public Schools Bd of Ed,* 126 Mich App 306; 337 NW2d 533 (1983).

The substantive issues in this case are whether failure to comply with the residency requirement of a city code is a voluntary leaving which is grounds for denial of unemployment compensation benefits under MCL 421.29(1)(a); MSA 17.531(1)(a) and whether such failure to comply would be misconduct such as will disqualify the employee for such benefits under MCL 421.29(1)(b); MSA 17.531(1)(b).

The case as decided by the referee, the board of review and the circuit court dealt only with the issue of misconduct.

The validity of the discharge is not in question. The question appealed is whether the failure to comply with the residency requirement was misconduct. The MESC has also raised the question of whether Lindquist should be disqualified for benefits on the basis that she "left work voluntarily without good cause attributable to the employer".

Pennsylvania has a statutory scheme which is similar to the Michigan statutory scheme relative to disqualification for benefits on termination of employment. In *Rodgers v Commonwealth Unemployment Compensation Board of Review,* 40 Pa Commw 552; 397 A2d 1286 (1979), on facts nearly identical to those in this case, the court found that claimant was aware of the requirement that she live in Philadelphia while employed as an executive secretary for that city. She maintained an address at her son's apartment in a duplex in Philadelphia and a home in Richboro. The board found her residence was really Richboro. The court held that not maintaining a real residence in Philadelphia, while it was not willful misconduct

per se, was a deliberate violation of the employer's best interests.

The evidence in this case led both the referee and the board of review to the conclusion that Mrs. Lindquist had established a "paper residence" to comply with the residency requirement. The referee and one member of the panel found such attempt to be grounds for disqualification for benefits. Two members of the review panel did not.

We find that by application of the definition of "misconduct" set forth in *Carter v Employment Security Comm,* 364 Mich 538, 541; 111 NW2d 817 (1961), there was an intentional and substantial disregard of her obligation to her employer which could be considered misconduct.

MCL 421.29(1)(a); MSA 17.531(1)(a) provides that an individual may also be disqualified if the individual:

"(a) Left work voluntarily without good cause attributable to the employer or the employing unit."

In *Williams v Detroit Civil Service Comm,* 386 Mich 507; 176 NW2d 593 (1970), followed by *Gantz v Detroit,* 392 Mich 348, 359; 220 NW2d 433 (1974), the Supreme Court confirmed the right of a city to require residency as a continuing condition of eligibility for employment. As pointed out in *Gantz:*

"[W]hen the employee ceases to be a city resident he ceases to be eligible for continuing employment and the commission has the duty to find that the employee's position has been vacated by the action of the nonresident employee who has made himself ineligible for continued employment. *In effect the position is vacated by action of the nonresident employee.*" (Emphasis in original.)

Mrs. Lindquist undoubtedly wished to follow her

husband and family to Lupton. She also wished to keep her employment. She attempted to avoid the consequences of her change of residence by maintaining an address in Saginaw. This was a good personal reason, but a good personal reason does not equate with good cause under the statute. *Cooper v University of Michigan,* 100 Mich App 99, 107; 298 NW2d 677; 15 ALR4th 249 (1980).

Loss of qualification for employment because of residency is in the control of the employee and falls within the meaning of "voluntary leaving without good cause attributable to the employer or employing unit" and is not a "constructive voluntary leaving". *Echols v Employment Security Comm,* 380 Mich 87, 92-93; 155 NW2d 824 (1968).

The last issue is whether the circuit court could grant summary judgment in favor of Mrs. Lindquist where notice of the motion for summary judgment had not been given to the MESC.

MCL 421.38(3); MSA 17.540(3) provides:

"The (Michigan Employment Security Commission) shall be considered to be a party to any judicial action involving an order or decision of the board of review or a referee."

GCR 1963, 107.1(1), the court rule governing service and filing of pleadings and other papers, states:

"Unless otherwise specifically provided by this rule, every party who has filed a pleading, an appearance, or motion shall be served with a copy of every written paper subsequently filed in the action, including a default if one has been entered against him."

The Michigan Employment Security Commission filed an appearance in this matter on June 21, 1982, and as of that time was a party to this

action. On July 7, 1982, Lindquist filed a motion for summary judgment in this action but failed to give notice of the hearing on the motion to the MESC.

On August 2, 1982, the hearing on Lindquist's motion for summary judgment was held in which the court heard arguments by Lindquist and the City of Saginaw. However, the MESC was unrepresented at the hearing due to its failure to receive notice. After hearing arguments the court took the motion under advisement and on September 28, 1982, issued an opinion. The court held that the violation of the employer's work rules, as it related to residency, did not establish misconduct under the Michigan Employment Security Act and entered summary judgment in favor of Lindquist.

The MESC was denied an opportunity to argue its position at the hearing held on Lindquist's motion for summary judgment as required by statute and court rule.

The case is reversed and remanded to the circuit court to enter an order in conformity with this opinion.