Russell **STRINGFELLOW**, Plaintiff,

v.

**S.D. WARREN COMPANY**, Defendant and Third–Party Plaintiff,

v.

**LAPE INDUSTRIAL FIBERGLASS, INC.**, Third–Party Defendant.

No. 1:91cv 644.

United States District Court, W.D. Michigan, S.D.

July 13, 1993.

511

Grant J. Gruel of Gruel, Mills, Nims &
Pylman, Grand Rapids, MI, for plaintiff.

Gary Stec of Harvey, Kruse, Westen & Milan, Troy, MI, for defendant and third-party plaintiff S.D. Warren.

Steven L. Kreuger of Nelson & Kreuger, P.C., Grand Rapids, MI, for third-party defendant Lape Indus.

## OPINION

SCOVILLE, United States Magistrate Judge.

This is a diversity action arising under Michigan law. Plaintiff, an employee of third-party defendant Lape Industrial Fiberglass, Inc., was injured in September of 1989 while working on the premises of defendant S.D. Warren Company in Muskegon, Michigan. Plaintiff began this action in 1990 in the Mobile County, Alabama, Circuit Court seeking damages against S.D. Warren Company for its alleged negligence resulting in plaintiff's injuries. S.D. Warren removed the case to the United States District Court for the Southern District of Alabama. While the case was pending there, the court granted Fireman's Fund Insurance Company leave to intervene as plaintiff to assert its lien under the Mississippi Worker's Compensation Act for over $500,000 in compensation and medical benefits paid to or on behalf of Mr. Stringfellow. The case was thereafter transferred to this court pursuant to 28 U.S.C. § 1404(a).

By order dated December 18, 1992, this court required that the case be submitted to mandatory mediation pursuant to the Michigan Tort Mediation Act, Mich.Comp.Laws § 600.4951–.4969, a provision of Michigan substantive law which this court considers binding upon it in all diversity cases arising under Michigan tort law. *See* W.D.Mich. L.R. 42(n) and commentary. The case was submitted to mediation on April 30, 1993. The mediators rendered an award in favor of plaintiffs, allocating $200,000 to Fireman's Fund as reimbursement for worker's compensation. paid, with the remainder to Mr. Stringfellow. At the time of the mediation, Fireman's Fund had paid compensation ben-

efits in the amount of approximately $650,000. Both S.D. Warren and Fireman's Fund accepted the mediation evaluation, but Mr. Stringfellow did not. Under the Michigan Tort Mediation Act, where a case involves multiple parties, judgment "shall be entered as to those opposing parties who have accepted the portions of the evaluation that apply to them." Mich.Comp.Laws § 600.4967(2). Consequently, S.D. Warren submitted to the court a proposed form of judgment awarding intervening plaintiff Fireman's Fund $200,000. Fireman's Fund objected to the form of the judgment. S.D. Warren has now filed a motion for entry of judgment, requesting that judgment be entered in the form that it proposes. Fireman's Fund has filed briefs in opposition to the motion. On July 8, 1993, the court heard oral argument and issued an oral opinion. This opinion memorializes and supplements the court's oral opinion.

### Discussion

The only issue presently before the court is the form of judgment that should be entered as a consequence of the acceptance of the mediation award by both Fireman's Fund and S.D. Warren. The parties agree that the Tort Mediation Act provides for the entry of a judgment in these circumstances, but disagree as to the scope and effect of the judgment. S.D. Warren contends that the $200,000 judgment satisfies Fireman's claims both for past compensation benefits (in the approximate amount of $650,000) and any claim it may have for reimbursement of future compensation benefits paid to Mr. Stringfellow. Fireman's Fund, by contrast, contends that the judgment satisfies only its claims against S.D. Warren Company and does not extinguish its right to seek reimbursement from any award or settlement hereafter rendered to plaintiff of the remaining $450,000 in past benefits or its right to a credit for future compensation benefits.

This issue is governed by section 827 of the Michigan Worker's Disability Compensation Act.[1] Section 827 provides for reim-

---

1. The intervenor's complaint filed by Fireman's Fund asserted rights of reimbursement under the Mississippi Worker's Compensation Act, Miss.

Stats.Ann. § 71–3–71. In a previous memorandum opinion, however, Chief Judge Gibson found that the Michigan Worker's Compensation

bursement of the employer of an injured worker (or the employer's worker's compensation carrier) from the proceeds of any recovery against a third-party tortfeasor responsible for the worker's injuries. Subsection 1 of the statute allows the injured worker to proceed with a tort claim against the third party, despite the worker's collection of compensation benefits. If the injured worker does not commence a tort action within one year after the personal injury, the insurance carrier may bring suit to enforce the tort liability in the name of the injured worker. In those circumstances, the injured worker has the right to notice of the action and to intervene. Mich.Comp.Laws § 418.-827(1).

Subsection 2 provides that either the carrier or the employee "may settle their claims as their interest shall appear" prior to the entry of judgment. Subsection 3 provides that settlement by the employee is not a bar to the carrier's right to proceed against the third party "for any interest or claim it might have." Subsection 5 directs the allocation of funds recovered from the third-party tortfeasor. After deduction for the expenses of recovery, the proceeds must first go to reimbursement of the carrier for compensation benefits paid to the date of recovery. The balance, if any, is payable to the employee, but is treated as an advance payment by the compensation carrier against "any future payments of compensation benefits." Mich. Comp.Laws § 418.827(5). The other subsections of the statute are not relevant to the present controversy.

■ The cases decided under this statute and its forerunners make clear the nature of the compensation carrier's interest. The compensation carrier does not have a separate and independent tort claim against the third party. Rather, the Michigan cases describe the compensation carrier's right to reimbursement as "a form of statutory subrogation." *Transamerican Freight Lines, Inc. v. Quimby,* 381 Mich. 149, 160 N.W.2d 865, 867–68 (1968); *see Downie v. Kent Products, Inc.,* 420 Mich. 197, 362 N.W.2d 605, 614 (1984) (compensation carrier's interest is "a subrogation without assignment"). At other times, the Michigan courts refer to the carrier's interest as a "statutory lien." *Downie,* 362 N.W.2d at 614; *Ohio Farmers Ins. Co. v. Neff,* 112 Mich.App. 53, 315 N.W.2d 553, 555 (1981). These cases make clear that the compensation carrier, by virtue of its payment of benefits, does not have a separate and independent tort claim against the third party. Rather, the carrier is subrogated to the rights of the injured worker and has a statutory lien to enforce its subrogation rights.

■ Furthermore, by granting the compensation carrier a right to intervene in the worker's case or to itself initiate an action in the name of the injured worker, the Legislature clearly created a right enforceable against *both* the injured worker and the third-party tortfeasor. This point is made clear by decisions in lawsuits brought by the compensation carrier to enforce its rights after the worker and the tortfeasor have settled without notice to the carrier. In such circumstances, the carrier may sue *both* the worker and the tortfeasor to assert its statutory rights under section 418.827. *See Traveler's Ins. Co. v. S & H Tire Co.,* 134 Mich. App. 214, 351 N.W.2d 279, 281–82 (1984); *Ohio Farmers Ins. Co. v. Neff,* 112 Mich.App. 53, 315 N.W.2d 553 (1981). Consequently, when a compensation carrier intervenes in a tort suit brought by an injured worker, the carrier is seeking to assert its statutory interests against both the worker and the tortfeasor.

■ As noted above, subsection 2 of the statute allows both the carrier and the injured worker to settle their claims "as their interests shall appear." Mich.Comp.Laws § 418.827(2). In the leading case of *Franges v. General Motors Corp.,* 404 Mich. 590, 274 N.W.2d 392 (1979), the Supreme Court iden-

---

law should be applied to Fireman's Fund's reimbursement claim (Op., docket # 65). I will therefore apply Michigan law to resolve the present controversy. I have, however, also reviewed the Mississippi Worker's Compensation Act and cases decided thereunder. The Mississippi Act is quite similar to the Michigan Act, and I have found no Mississippi case law that leads to a conclusion contrary to that set forth in this opinion. Therefore, my decision would not be different if Mississippi law were applied.

tified the three interests referred to by this statutory language. Two interests belong to the compensation carrier. The first is the carrier's "reimbursement interest," that is, its right to recovery of compensation benefits previously paid or payable as of the date of judgment. 274 N.W.2d at 400. The carrier's second interest is a future credit in the amount of any recovery by the employee, for additional compensation benefits to be paid in the future. *Id.* The court described this second interest of the carrier as a "contingent, future interest," because it only arises if the compensation carrier pays benefits after the date of the judgment. *Id.* at 403. The employee has a single interest—a lump sum recovery, consisting of any funds remaining after payment of the carrier's reimbursement interest, and treated as an advance payment of future compensation benefits.

■ Against this statutory background, the issue presently before the court and the respective positions of the parties may be restated with some clarity. Fireman's Fund has intervened in this action to assert its statutory lien under Mich.Comp.Laws § 418.-827 upon any proceeds of plaintiff's tort action against S.D. Warren. Subsection 5 of the Act would allow Fireman's Fund to have any proceeds of this lawsuit first applied to its "reimbursement interest" to compensate the carrier for past compensation benefits paid. Any remainder would go to Mr. Stringfellow, as a credit against any future compensation benefits. It is clear that the insurance company's complaint in intervention, therefore, seeks to assert rights both against Mr. Stringfellow and against S.D. Warren. Pursuant to subsection 2 of the Act, Fireman's Fund was able to settle its claims, as its "interest shall appear"; that is, Fireman's Fund was able to settle and compromise both its reimbursement interest and its contingent future interest.

The issue before the court is the effect of the acceptance of mediation upon the two statutory interests of the insurance carrier. S.D. Warren contends that acceptance of the $200,000 mediation award extinguished both the carrier's reimbursement interest and its contingent future interest. Fireman's Fund

contends that its acceptance of the award extinguished neither interest, and that it is still free to seek reimbursement of the unpaid $450,000 in reimbursement interest and its future interest for compensation benefits hereafter paid. I disagree with both positions.

The effect of a voluntary settlement by the compensation carrier on its two statutory interests has been the subject of two Michigan Supreme Court decisions. The first is *Hix v. Besser Co.*, 386 Mich. 499, 194 N.W.2d 333 (1972). In *Hix*, a worker was compensably and fatally injured. His personal representative sued third parties for the alleged wrongful death. As in the present case, the compensation carrier intervened as provided by the Worker's Compensation Act. Thereafter, all parties simultaneously agreed upon a compromise of their respective interests, pursuant to which two consent judgments were entered, one for the personal representative in the sum of $10,000 and the other in favor of the compensation carrier in the amount of $1,500. Each amount represented a compromise. The judgments were promptly satisfied. The compensation carrier thereafter moved for relief from the trial court, contending that the $10,000 award to the personal representative should be subjected to the carrier's right to reimbursement for past compensation benefits. The Supreme Court rejected the carrier's contention, finding that the carrier's unconditional receipt of $1,500 extinguished its statutory right of recovery. 194 N.W.2d at 334. The court emphasized that a settlement and compromise is just that, and that the carrier had no valid claim upon the amount separately adjudged in favor of the personal representative. *Id.*

The other controlling authority is *Pelkey v. Elsea Realty & Investment Co.*, 394 Mich. 485, 232 N.W.2d 154 (1975). In that case, plaintiff was compensably injured, resulting in the payment of $3,364.60 in compensation benefits by her employer's worker's compensation carrier. Plaintiff and the defendant insured thereafter jointly settled their claim against an alleged third-party tortfeasor for $10,000, apportioned $3,000 to plaintiff's husband, $3,364.60 to the compensation carrier, and the remainder to plaintiff for pain and

suffering. After payment of the settlement, plaintiff required further medical treatment, two-thirds of which was found to be compensable in administrative proceedings. The issue in the case was whether, by accepting $3,364.60 in settlement of its claim for past compensation benefits, the carrier somehow waived its right to the credit established in subsection 5 of the Act for future compensation benefits. The Supreme Court held that it did not:

> The fact that the insurer released a third party does not mean that the insurer waived any rights it might acquire against the employee. No language in the agreement indicates waiver, and there is no equitable basis for waiver, because the employee did not give up any rights against the insurer; in fact, she subsequently sought compensation.

232 N.W.2d at 157–58.

■ Reading *Hix* and *Pelkey* against the general back drop of Michigan worker's compensation law, a clear rule of decision emerges. Where a compensation carrier intervenes to assert its statutory subrogation right and is offered a sum certain to compromise its "reimbursement interest" for past compensation benefits paid, acceptance of that amount bars the carrier from asserting any further reimbursement interest against the plaintiff's recovery. This is the rule of *Hix*. Acceptance of such a compromise amount, however, does not act as a waiver of the carrier's contingent future interest under subsection 5 of the Act, in the absence of express language affecting that interest. This is the rule of *Pelkey*. Consequently, applying these cases to the present controversy, Fireman's Fund's acceptance of $200,000 acts as a settlement of its reimbursement interest, and it cannot assert its claim for the remaining $450,000 paid in the past against either S.D. Warren or Mr. Stringfellow. Acceptance of this amount, however, does not preclude Fireman's Fund from asserting its rights under subsection 5 to a credit for *future* compensation payments, to the extent of any funds received by Mr. Stringfellow.

■ In an effort to avoid this result, Fireman's Fund raises unpersuasive points. First, it attempts to distinguish *Hix* by pointing out that both parties in *Hix* agreed to a simultaneous settlement. Why this fact should make a difference is unclear. Indeed, at oral argument counsel for Fireman's Fund stated that the carrier would be entitled to seek reimbursement of the unpaid $450,000 even if Mr. Stringfellow had accepted the mediation award at the same time that Fireman's Fund did. Consequently, Fireman's Fund is contending that even simultaneous settlement of all claims does not extinguish its right to full payment of its reimbursement interest. *Hix* stands for precisely the opposite proposition. Its basic premise is that a compensation carrier that accepts a certain amount on a doubtful tort claim in satisfaction of its reimbursement interest cannot thereafter ignore the settlement and insist upon full payment from the injured worker.

■ Additionally, Fireman's Fund argues that acceptance of the mediation award acted only to settle the carrier's claim against S.D. Warren, but not any claim against the plaintiff. This ignores the entire statutory scheme. As noted above, Fireman's Fund does not have a separate and independent cause of action in tort against S.D. Warren. Rather, it has a statutory right of reimbursement, enforceable against the plaintiff and the tortfeasor. By intervening in an injured worker's lawsuit, Fireman's Fund sought to assert this right and to insist that any recovery be first dedicated to reimbursement of past compensation benefits. This is precisely the claim set forth in the intervenor's complaint and precisely the claim that merges into a judgment. Even in the absence of *Hix*, the carrier's contention would be insupportable, as it would render subsection 2 of the statute a nullity. What possible purpose could the legislature have intended in allowing the carrier to "settle" its claim if the settlement were not a settlement at all but merely a down payment against full recovery in the future?

Fireman's Fund's attempt to invoke *Pelkey* in support of its argument is overreaching. *Pelkey* did not hold that a carrier may be deemed to have compromised its reimbursement claim against the worker only if the worker pays separate consideration. Such a result would have required a direct, but si-

lent, overruling of *Hix,* decided only three years earlier. *Pelkey* only holds that a carrier that accepts full payment for its past claims does not thereby waive its right to seek reimbursement for future claims. *Pelkey* did not involve a carrier's acceptance of a settlement amount for past compensation payments, followed by the carrier's insistence on recovering the remainder of its claim from the worker despite the settlement. The error in the carrier's position here lies in its failure to distinguish between the various interests identified in the statute and the varying treatment of those interests under the controlling Michigan Supreme Court cases.

Consequently, Fireman's Fund is wrong when it contends that its acceptance of the mediation award precludes only claims against S.D. Warren. By accepting $200,000 on its claim for past compensation benefits, Fireman's Fund assured that it would receive something on a case that must be considered one of questionable liability for the defendant. In this way, the insurer avoided the possibility of an adverse verdict in defendant's favor at trial. Having made that election, Fireman's Fund has compromised its claim for past reimbursement under the rule of *Hix.* As indicated by *Pelkey,* its claim for credit for future compensation benefits remains intact.

### Conclusion

For the foregoing reasons, S.D. Warren's motion for entry of judgment (docket # 110) will be granted. The court will enter a judgment consistent with this opinion.